56

The State of Ohio *v.* Shackman.

[Cite as State v. Shackman (1971), 29 Ohio Misc. 56.]

(No. 5301—Decided May 20, 1971.)

Municipal Court of Franklin County.

*Mr. John C. Young,* city attorney, and *Mr. Donald Rathbun,* for plaintiff.

*Mr. Donald Ruben* and *Mr. Michael J. Brown,* for defendant.

West, J. The defendant, manager of the New Paris Theatre, Columbus, Ohio, was arrested March 4, 1971, and charged with exhibiting an obscene film. The arresting officer, on the same date, took possession of the allegedly obscene film.

The matter is before the court on defendant's motions

to suppress the evidence and to dismiss the charges against the defendant. At the hearing on April 21, 1971, the defendant offered evidence in his behalf by eliciting testimony from Sgt. James L. Rutter. Oral argument was offered, the defendant submitted a comprehensive brief and supplemental briefs following the hearing.

Sgt. Rutter testified he went to the New Paris Theatre at 12:30 p. m. on March 4, 1971, identified himself to the cashier as a police officer and was freely admitted without a warrant or an admission ticket. Sgt. Rutter viewed the film in question which consisted of five different scenes of 10 to 12 minutes duration. The first two scenes were described in detail and the parties stipulated the remaining scenes were comparable. The first scene described was of a woman masturbating with close-ups of the action and the second was of two women performing acts of lesbianism again with close-ups of the action.

After viewing the subject film in the theatre, Sgt. Rutter went to the defendant's's office on the first floor of the theatre, placed the defendant under arrest and informed defendant he was going to the projection room to seize the film. The arresting officer proceeded to the projection room where he was joined a short time later by the defendant. The subject film was still in the projector; it was rewound by the projectionist and handed over to the arresting officer without objection or protest from the defendant, and the defendant was then taken to police headquarters and booked.

The defendant's motion to suppress the evidence secured without a search warrant is based on the following claims of defendant: 1. The seizure was not preceded by an adversary hearing to determine whether the materials seized were constitutionally protected under the First Amendment to the United States Constitution. 2. The arrest of the defendant was invalid as a matter of law. 3. The search and seizure were not proper as incident to a valid arrest.

This court finds from the evidence adduced at the hearing upon defendant's motions that the subject film is hard

core pornography. It is clearly obscene in that: (1) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) the material is utterly without redeeming social value.

The subject film plunges to the depths of depravity, moral corruption and degradation. It involves human beings going before cameras to indecently expose themselves to the world.

Counsel for the defendant raised the question: "Who can determine nowadays what is obscene?" The court admonishes counsel for raising such a specious argument in a case as flagrant as this. Defendant also suggested there was nothing unlawful about exhibiting such a film since no one had to see it. Those who go to the theatre do so voluntarily and no minors are admitted. If such argument were valid, it is not likely there should be convictions for such crimes as gambling, illegal sale of liquor, possession and use of narcotics, etc. One person recently was brought before this court charged with indecent exposure for openly masturbating in full view of other patrons in a theatre while watching a film of the type now before the court. Applying the defendant's argument to such a case, he would find only persons who voluntarily came to see such an exhibition on the screen were involved and the live exhibition was merely an added feature so there was no crime.

Needless to say, the court finds no merit in defendant's claim the fact the audiences are consenting adults removes the matter being viewed from the category of obscenity. As a matter of fact, in *Ginzburg* v. *United States* (1966), 383 U. S. 463, at page 475, the U. S. Supreme Court stated: "Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene

even though in other contexts the material would escape such condemnation.''

In a prosecution for violation of R. C. 2905.35, by exhibiting an obscene motion picture film, a prior judicial adversary proceeding is not required in order for the seizure of the subject film at the time of arrest to be valid.

Our position was well stated by G. W. Fais, Presiding Judge of this court, in *State* v. *Miqdadi*, .4 Ohio Misc. 46. There are no provisions in the statutes or rule of court for an adversary hearing before seizure of evidence to determine if the said evidence is obscene. Judge Fais states, at page 49, ''The procedure requested by the defendant would place the court in the position of a law enforcement officer or agency. That is to say, the defendant requests that the court view the material in question and predetermine its obscenity or lack of obscenity.'' In effect, the defendant wants the court, in an adversary hearing, to determine if there is probable cause to believe a crime has been committed and that an arrest should be made or evidence seized. This is not the function of the court. Also see *State* v. *Dornblaser* (1971), 26 Ohio Misc. 29; *Adult Cinema* v. *Maynard Sensenbrenner, Mayor*, Case No. 241748, Court of Common Pleas of Franklin County, Ohio; *Milky Way Production, Inc.*, v. *Howard R. Leary* (1969), 305 F. Supp. 288; *United States* v. *Frazers* (1970), 428 F. 2d 1211, and *United States* v. *Gower* (1970), 316 F. Supp. 1390.

The arrest of the defendant was valid. The crime charged involves the exhibition of an obscene film in a theatre. The defendant is the manager of the theatre and he was placed under arrest in his office in the theatre. The alleged crime was committed by the defendant in the presence of the arresting officer who performed his duty as required by R. C. 2935.03, which provides in part: ''A * * * police officer shall arrest and detain a person found violating a law of this state * * * until a warrant can be obtained.''

Defendant's complaint alleging invalidity of the search and seizure is without merit. It has been stated that a search ordinarily implies a quest by an officer of the law,

a prying into hidden places for that which is concealed, and that a seizure connotes a forcible dispossession of the owner. *Weeks* v. *United States* (1914), 232 U. S. 383, cited in *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87.

Here, no search was necessary. The evidence filled the theatre as the film was projected upon the screen. The location of the film was open and apparent. The film, in the presence of the defendant and immediately following his arrest, was voluntarily turned over to the arresting officer. The Fourth Amendment prohibits only *unreasonable* searches and seizures. Under the facts of this case it would be ridiculous to require a search warrant to seize the film. See *State* v. *Madgett* (1970), 22 Ohio St. 2d 148.

The defendant's motion to dismiss is based on the following reasons: (1) the materials upon which the charges were based are constitutionally protected; (2) R. C. 2905.35 is unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution.

There is no constitutional protection for publicly exhibited pornographic movie film. As stated by Judge Alba Whiteside in *State* v. *Adult Book Store et al.*, Court of Appeals of Franklin County, Ohio, Case No. 9891, decided March 2, 1971, ''Medium core pornography as well as hard core pornography constitutes obscenity that is not within the area of constitutionally protected speech or press.''

R. C. 2905.35, which became effective September 15, 1970, is analogous in pertinent part to former R. C. 2905.34, the constitutionality of which has been decided by the Ohio Supreme Court in numerous cases. See *State* v. *Jacobellis* (1962), 173 Ohio St. 22; *State* v. *Wetzel* (1962), 173 Ohio St. 16; *State* v. *Mayes* (1966), 7 Ohio St. 2d 136. This court finds no abridgement of defendant's constitutional rights or privileges under the provisions of R. C. 2905.35.

*Motions overruled.*