**UNITED STATES, Appellant,**

v.

*James Albert GREEN et al., Appellees.*

No. 5671.

District of Columbia Court of Appeals.

Argued July 13, 1971.

Decided Dec. 20, 1971.

John E. Drury, III, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry, James A. Caulfield and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellant.

Reuben Bonnett, Silver Spring, Md., for appellee Seibert.

Robert Eugene Smith, Towson, Md., of the bar of the State of Maryland, pro hac vice, by special leave of court, for appellees Rhoat, Epstein, Martell, Kramer and Gower. Kenneth D. Wood, Gaithersburg, Md., was on the brief for appellees Rhoat, Epstein, Martell, Kramer and Gower.

H. Clifford Allder, Washington, D. C., entered an appearance for appellee Denniberg.

Stanley M. Dietz, Washington, D. C., was on the brief for appellees Eckley, Pryba and Huffman.

Nicholas A. Addams, Washington, D. C., entered an appearance for appellee Farina.

Harold Gordon, Washington, D. C., entered an appearance for appellee Ottenstein.

No appearances were entered for appellees Green, Deane, Remsnyder and Hawkins.

Before KELLY, PAIR and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

This appeal presents the issue of whether an adversary hearing on the issue of obscenity was a prerequisite to the issuance of warrants for appellees' arrests.[1] As our answer to that question is in the negative, we reverse the judgment of the trial court quashing the arrest warrants and dismissing the informations without prejudice.

On various dates between June 16, 1969 and June 9, 1970, plainclothes officers of the Metropolitan Police Department purchased twenty-five publications, seven reels of film and three articles of a sexual nature from sixteen different bookstores and arcades in the District of Columbia. Detailed affidavits were then prepared, describing the purchased materials with particularity,[2] and submitted to a judge of the then District of Columbia Court of General Sessions in support of applications for warrants of arrest. The warrants issued after the judge reviewed the affidavits, together with some of the publications and articles themselves. Appellees (owners, managers and sellers) were arrested and, as applicable, charged with selling obscene publications, films and articles of a sexual nature in violation of D.C.Code 1967, § 22–2001(a) (1) (A), (B), (D), and (E) (Supp. IV, 1971). The twenty-three cases were subsequently consolidated for hearing of pretrial motions.

Counsel for appellees filed motions to suppress the evidence, for the return of property, and to dismiss the informations. After a hearing, by memorandum opinion, the trial court granted appellees' motions to dismiss on the ground that an adversary hearing on the question of obscenity should have been held prior to issuing the warrants. The arrest warrants were quashed[3] and the informations dismissed without prejudice.[4] The Government appeals this ruling.

■■ It is settled that in the absence of a prior adversary determination of obscenity, massive confiscatory seizures of allegedly obscene publications run afoul of the First Amendment by threatening an abridgement of the public's right to the free circulation of non-obscene publications. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L. Ed.2d 809 (1964); Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1127 (1961); United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970). The same is true of seizures of motion picture films without such prior hearing. Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3d Cir. 1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L. Ed.2d 101 (1970); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.), cert. denied, 396 U.S. 985, 90 S.Ct. 477, 478, 24 L.Ed.2d 449 (1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). What is allowed, however, based on an *ex parte* hearing alone, is the issuance of a court order "authorizing (a) the seizure of a limited number of publications (b) for use as evidence in a criminal prosecution (as distinguished from an order entered in a civil action

1. We do not consider other contentions raised by some appellees which are also said to require dismissal of the informations since they were not ruled on by the trial court.

2. In the case of United States v. Deane, Cr. No. 22339–70, the warrant was based on an affidavit describing the contents of a film an officer had seen on a panorama machine.

3. The trial judge did not quash the arrest warrant in the case of United States v. Deane, Cr. No. 22339–70, holding that the warrant in a case concerning peep show films was validly issued "since the Court should not be expected to view the film presentation at the Defendant's place of business." The court distinguished peep shows from publications, films and articles. *Cf.* Kaplan v. United States, D.C.App., 277 A.2d 477 (1971).

4. The court also held that since the items were purchased, as opposed to seized, they need not be returned. Accordingly, it denied the motions to suppress the evidence and for the return of property.

having the purpose of suppressing the books).'' Huffman v. United States, Pryba v. United States, U.S.App.D.C. (Nos. 23781–82, decided October 7, 1971).

The distinguishing feature of this case is that here the allegedly obscene materials which form the basis of the arrests were purchased rather than seized. And at least one court has held that "[t]o require a prior adversary determination of obscenity vel non under [these] facts would result in the absurdity of requiring the police undercover agents to have an adversary hearing before even making a purchase of suspected obscene materials." United States v. Gower, 316 F.Supp. 1390, 1393 (D.D.C. 1970).[5]

There is authority to the effect that arrests made without a prior adversary determination of obscenity, as well as seizures incident thereto, are invalid even where some material was purchased rather than seized. Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969), rev'd and remanded on other grounds sub nom. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).[6] To the contrary, however, and considerably more persuasive, are cases which hold that no adversary hearing need precede an arrest. United States v. Fragus, 428 F.2d 1211 (5th Cir. 1970); Aalto v. Gerstein, 320 F. Supp. 652 (S.D.Fla.1970); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd without opinion sub nom. New York Feed Co. v. Leary, 397 U. S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); Rage Books Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y.1969). See also Miller v. United States, 431 F.2d 655 (9th Cir. 1970); United States v. Wild, 422 F.2d 34 (2d Cir. 1969), reh. denied, 422 F.2d 38 (2d Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct.

1644, 29 L.Ed.2d 152, reh. denied, 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720 (1971).

In *Milky Way*, the court disposed of the "novel" theory that an adversary hearing is required before arrest by saying, 305 F. Supp. at *297*:

It is inappropriate, we think, to "weigh" (assuming we could) the relative impact of familiar criminal procedures against the innovation plaintiffs seek. It seems sufficient for our purposes that the supposed virtues of the departure they urge are not at all apparent and are directly antithetical to all pertinent indications in the Supreme Court's pronouncements implementing the First Amendment. The net effect of those expressions suggests that traditional criminal prosecutions, with their procedural safeguards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity. [Citations omitted.][7]

█ We, too, are of the opinion that the procedural safeguards in criminal prosecutions afford appellees adequate protection against any violation of constitutionally protected rights. No question of advance censorship, of restraint in the distribution of material, or of suppression of material is presented by an arrest with a warrant based upon the purchase of allegedly obscene material, nor is there present any improvident seizure of presumptively protected First Amendment material. An arrest on a warrant is a markedly different procedure from that utilized in Marcus v. Search Warrants, *supra*, and A Quantity of Books v. Kansas, *supra* (injunctive proceedings which resulted in the suppression of books), upon which appellants rely, and we think it plain that "*Marcus* and *Quan-*

---

5. Now on appeal.

6. *But see* Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La.1969).

7. The court earlier stated at 296 of 305 F.Supp. "that plaintiffs' theory, if accepted, would have invalidated both federal and state convictions under obscenity statutes which have in the recent past been upheld by the Supreme Court. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966)."

*tity of Books* [cannot] be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases." United States v. Wild, *supra*, 422 F.2d at 38. Even in circumstances where a court has ordered the return of seized materials for lack of an adversary hearing, the criminal prosecution need not terminate. Huffman v. United States, Pryba v. United States, *supra*.[8] And if an *ex parte* hearing suffices to authorize the issuance of a warrant for the seizure of a limited amount of material for evidentiary purpose, surely an *ex parte* hearing on an application for an arrest warrant which is supported by an affidavit describing in detail the contents of purchased material, with or without a review of that material by the court suffices, upon a finding of probable cause, to authorize the issuance of that warrant.

We have reviewed the affidavits in support of the applications for the arrest warrants herein and have no trouble in concluding that the warrants issued upon a showing of reasonable and probable cause. Accordingly, the order of the trial court is

Reversed with directions to reinstate the informations.

8. Copies of the alleged indecent publications in these cases were purchased by a police officer and became the basis of a subsequent search warrant issued by the court. It was the seizure pursuant to that warrant which the court found unjustified.