STATE of Iowa, Appellee,

v.

Dale LAVIN and Edward J. Wedelstedt, Appellants.

No. 55449.

Supreme Court of Iowa.

Feb. 21, 1973.

Donald M. Reno, Jr., Champaign, Ill., and David D. Mitchell, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and William G. Faches, Linn County Atty., for appellee.

UHLENHOPP, Justice.

This appeal involves the validity of the Iowa obscenity statute.

Section 725.5 of the Code, 1971, provides in pertinent part:

*Obscene literature—articles for immoral use.* Whoever sells, or offers for sale . . . or has in his possession with intent to sell . . . any obscene, lewd, indecent, lascivious, or filthy book, pamphlet, paper, drawing, litho-

graph, engraving, picture, photograph, writing, card, postal card, model, cast, or any instrument or article of indecent or immoral use . . . shall be guilty of a misdemeanor. . . .

By two informations, the Linn County Attorney charged defendants Dale Lavin and Edward J. Wedelstedt with "the crime of obscene literature—articles for immoral use (Sec. 725.5, 1971 Code of Iowa), Committed as follows: The said, Dale Lavin and Edward J. Wedelstedt on or about the 5th day [6th day, in the second information] of October A.D. 1971, in the County of Linn, and State of Iowa, did sell, or offered for sale, or had in his possession with intent to sell, an obscene, lewd, lascivious, indecent, or filthy book, pamphlet, paper, drawing, lithograph, engraving, or picture, photograph, writing, card, postal card, model, cast, or any instrument or article of indecent or immoral use to Ralph Gearhart [Ralph Conrad, in the second information]."

The following minutes of testimony were endorsed upon the informations:

Ralph Gearhart and Robert Conrad, addresses, Cedar Rapids, Iowa, will testify that they are Detectives employed by the City of Cedar Rapids, Iowa, Police Department. They will further testify that on the date charged in the information they went to the Adult Book Store located at 1509 1st Avenue SE, Cedar Rapids, Linn County, Iowa, and that Detective Ralph Gearhart purchased a book entitled "Sexual Dominators" which was enclosed in cellophane and sealed for the price of $6.00 from Dale Lavin, an employee of said book store. They will further testify that Dale Lavin pointed out to them a man by the name of Edward J. Wedelstedt who was also in said book store and identified him as the Manager of said book store. They will further testify that they discussed with Dale Lavin and Edward J. Wedelstedt the business which they were in and the contents of the books, pamphlets, and

magazines they were selling. They will further testify that the book Ralph Gearhart purchased entitled "Sexual Dominators" is a book which in pictorial form shows obscene, lewd, indecent, and lascivious and/or filthy sexual acts and behavior. It further shows acts of sodomy and other reprehensible conduct. They will further testify that they purchased the aforesaid book, pamphlet, paper, and/or magazine from the said Dale Lavin in the presence of the Store Manager Edward J. Wedelstedt, Marked said magazine for evidence and placed it in the vault at the Cedar Rapids Police Station to be used at the time of trial. They will further testify that they are acquainted with the mores of the Cedar Rapids, Iowa, Community and in their opinion the book which they purchased is a filthy book, pamphlet, paper, and/or magazine which is obscene. They will further testify that after purchasing said book they made an inspection of the premises known as the Adult Book Store located at 1509 1st Avenue SE, Cedar Rapids, Linn County, Iowa, and that they saw many lewd, lascivious, indecent and/or filthy books, pamphlets, papers or magazines which were being sold on said premises. They will further testify that Dale Lavin and Edward J. Wedelstedt had knowledge of the business of which they were in and knew the contents of the books, pamphlets, and/or magazines which were being sold on their premises.

Defendants demurred to the informations, and the parties subsequently agreed that if the demurrers were overruled, the trial court should sentence defendants. See Code 1971, § 777.10. The trial court held a hearing, overruled the demurrers, and sentenced defendants to pay fines. Defendants appealed.

Defendants assert four grounds for reversal: the informations unconstitutionally fail to allege the volume numbers, issue dates, and publishers of the publications, the statute unconstitutionally deprives defendants of a pre-arrest adversary hearing,

the statute and informations are unconstitutionally vague, and the statute and informations unconstitutionally fail to include the element of scienter.

■ I. *Alleging Volumes, Dates, and Publishers.* Defendants' authorities relating to the first ground are based on the requirements of various jurisdictions as to the particularity required in indictments (here, informations, see § 769.13, Code 1971).

Iowa originally had the long form of indictment, similar to the indictment at common law, requiring the grand jury to charge the facts at length and in detail. In 1929, the legislature enacted our present Short Form of Indictment Act, simplifying and shortening the indictment. 43 G.A. ch. 266. The subject is reviewed by Professor Perkins in Absurdities in Criminal Procedure, 11 Iowa L.Rev. 297; Abridged Indictments and Informations, 12 Iowa L. Rev. 209, 355; The Short Indictment Act, 14 Iowa L.Rev. 385.

Our statute is now found in §§ 773.2 and 773.4 of the Code. Section 773.2 sets out the brief form which the indictment is to take. Of § 773.4, this court said in State v. Berenger, 161 N.W.2d 798, 800 (Iowa):

Our present statutes are quite clear as to what an indictment must charge and what is unnecessary. Section 773.4 provides an indictment is valid and sufficient if it charges the offense in one or more of these ways:

"1. By using the name given to the offense by statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense, or in terms of substantially the same meaning, as is sufficient to give the court and the accused notice of what offense is intended to be charged.

"The indictment may refer to a section or subsection of any statute creating the crime charged therein, and in determin-

ing the validity or sufficiency of such indictment regard shall be had to such reference."

The section following the one quoted in the Berenger case provides:

No indictment which charges the offense in accordance with the provisions of section 773.4 shall be held to be insufficient on the ground that it fails to inform the defendant of the particulars of the offense. § 773.5.

The present informations comply with §§ 773.2 and 773.4, and under § 773.5 they are invulnerable to attack by demurrer. The court has held these statutes to be constitutional. State v. Engler, 217 Iowa 138, 251 N.W. 88; State v. Henderson, 215 Iowa 276, 243 N.W. 289.

■ We add that this does not necessarily mean defendants could not have obtained further particulars about the offenses charged. While defendants had the minutes which were endorsed on the informations, they could also have moved for particulars under § 773.6(1):

When an indictment charges an offense in accordance with the provisions of section 773.4, but such indictment together with the minutes of the evidence filed therewith fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the county attorney may of his own motion furnish such bill of particulars.

Defendants did not choose to move for additional particulars, and they are therefore in no position to complain. State v. Berenger, supra. We hold the first ground of their appeal is untenable.

**II.** *Pre-Arrest Adversary Proceeding.* This is not a case of seizure of obscene material. This case involves purchases of allegedly obscene material and observations and discussions in the course of such purchases. Defendants assert that before they could be arrested, they were entitled to a hearing on whether the purchased material is in fact obscene—similar to the hearing which is held before a writ issues to seize material claimed to be obscene.

Defendants' contention finds support in Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (3-judge court, E.D.La.), rev'd on jurisdictional grounds sub nom. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga.); and Masters v. Russell, 308 F.Supp. 306 (M.D.Fla.). See also Hanby v. Alaska, 479 P.2d 486 (Alaska). We think, however, that the opposing line of authority is sounder; the regular processes of the criminal law give defendants in obscenity cases sufficient protection without the necessity of a separate, prior hearing on the obscenity question. United States v. Wild, 422 F.2d 34 (2 Cir.), reh. den. 422 F.2d 38, cert. den. 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152, reh. den. 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720; United States v. Fragus, 428 F.2d 1211 (5 Cir.); Miller v. United States, 431 F.2d 655 (9 Cir.); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (3-judge court, S.D.N.Y.), aff'd per cur. 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78; Aalto v. Gerstein, 320 F.Supp. 652 (S.D. Fla.); United States v. Green, 284 A.2d 879 (D.C.C.A.). The court disposed of the "novel" contention that a pre-arrest hearing is necessary by this language in Milky Way Productions, Inc. v. Leary, supra, 305 F.Supp. at 297:

> It is inappropriate, we think, to "weigh" (assuming we could) the relative impact of familiar criminal procedures against the innovation plaintiffs seek. It seems sufficient for our purposes that the supposed virtues of the departure they urge are not at all apparent and are directly antithetical to all pertinent indications in the Supreme Court's pronouncements implementing the First Amendment. The net effect of those expressions suggests that traditional criminal prosecutions, with their procedural safeguards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity.

We cannot uphold defendants' second ground of appeal.

**III.** *Vagueness.* The five controlling words in this statute, joined by the disjunctive, are "obscene, lewd, indecent, lascivious, or filthy." Statutes must, of course, be sufficiently clear that an ordinary person can tell what course is lawful for him to pursue. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. In prosecutions of the present kind, the State must establish that "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 6. The words "contemporary community standards" are to be read as "contemporary national community standards." Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793.

*Informations* need not charge the offense in the language of the Memoirs' definition; they may charge the ultimate fact of obscenity. United States v. Luros, 243 F.Supp. 160 (N.D.Iowa).

The first question is whether obscenity *statutes* must incorporate the Memoirs' definition in some way. The Memoirs decision leaves no doubt that such

statutes are invalid unless they do at least implicitly contain that definition. Our statute does not expressly include the definition.

The decisions of the United States Supreme Court also make plain that a state statute like ours will stand if the courts of the state incorporate the Memoirs' requirements in the application of statute. Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, reh. den. 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60. To like effect, see Miller v. United States, 431 F.2d 655 (9 Cir.); Reed Enterprises v. Clark, 278 F.Supp. 372 (3-judge court, D.C.), aff'd per cur. 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28; Stroud v. State, 273 N.E.2d 842 (Ind.).

■■■ The ultimate question on this issue, therefore, is whether we will apply the Memoirs' definition in the application of our statute. We believe we should do so. First, courts should construe statutes to avoid unconstitutionality if they reasonably can. Kruck v. Needles, 259 Iowa 470, 144 N.W.2d 296. Second, we have previously, and indeed with this statute itself, read into statutes a requirement of scienter where mens rea appeared to be a part of the offense. State v. Ramos, 260 Iowa 590, 149 N.W.2d 862; State v. Drummer, 254 Iowa 324, 117 N.W.2d 505. Finally, words in criminal statutes frequently state ultimate facts, leaving definition to decision and elaboration to jury instruction; this is not new. E. g., "malice aforethought" in § 690.1, Code 1971; "murder" in § 690.6; "manslaughter" in § 690.10; "assault" in § 694.1; "break and enter" in § 708.1; "lewdness" in § 725.1; and "lascivious acts" in § 725.2.

■■■ We hold the statute is not impermissibly vague. See Comment Note, 5 A. L.R.3d 1214, 1220.

■■■ IV. *Scienter.* Knowledge of the obscene material is an essential element in obscenity prosecutions. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed. 2d 205, reh. den. 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383. We have construed our obscenity *statute* to include the element of scienter. State v. Ramos, 260 Iowa 590, 149 N.W.2d 862.

These *informations,* however, do not allege scienter. The element of scienter was not alleged in the information in State v. Ramos, supra. The court said on this point (260 Iowa at 598, 149 N.W.2d at 866):

In this case we hold that the court was correct in sustaining defendant's demurrer to the information but should have ordered or allowed an amendment to charge scienter.

In the present case, therefore, the trial court should have sustained the demurrers on the ground that scienter was not alleged in the informations. Since the defect can be remedied, the informations can be amended if the State so chooses. Code 1971, §§ 777.9, 769.12, 773.43.

This ground of appeal is well taken as to the informations themselves. The judgments must therefore be reversed, without prejudice, however, to amendments alleging scienter.

Reversed.

All Justices concur except MOORE, C. J., and REYNOLDSON, J., who take no part.